8 F.3d 29
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
SEA TAC ALASKA SHIPBUILDING and Insurance Company of North
America, Petitioners,
v.
DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR, and Richard B.
Caudill, Respondents.
 No. 91-70743.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 10, 1993.
Decided Sept. 17, 1993.
 
 Before: BRUNETTI, LEAVY, and TROTT, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Appellants Sea Tac Alaska Shipbuilding and Insurance Company of North America (hereinafter "Sea Tac") appeal two decisions of the Benefits Review Board (Board) of the United States Department of Labor. The first reversed the ALJ's finding that appellee Richard B. Caudill's (Caudill's) claim for compensation benefits under the Longshoremen's and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. §§ 901 et seq., was time barred under 33 U.S.C. § 913. The second affirmed the ALJ's award of temporary total and permanent total disability benefits to Caudill for as long as his disability continues[1].
 
 
 3
 Our review of the Board's decision is limited to determining whether it is erroneous as a matter of law and whether it adheres to the statutory standard governing the Board's review of the ALJ's factual findings. Director, OWCP v. Cargill, 718 F.2d 886, 887 (9th Cir.1983); Bumble Bee Seafoods v. Director, OWCP, 629 F.2d 1327, 1329 (9th Cir.1980). The Board's interpretation of the LHWCA is not entitled to any special deference. Abel v. Director, OWCP, 932 F.2d 819, 821 (9th Cir.1991). The Board must accept the ALJ's findings unless they are contrary to law, irrational or unsupported by substantial evidence. Cargill, id.
 
 I. Statute of Limitations
 
 4
 Sea Tac contends the Board erred in holding that Caudill's claim for benefits was timely. 33 U.S.C. § 913. Section 13(a) of the LHWCA provides for a one year filing period which begins after injury, death, or last payment of compensation without an award. It further provides that
 
 
 5
 [t]he time for filing a claim shall not begin to run until the employee or beneficiary is aware, or by the exercise of reasonable diligence should have been aware, of the relationship between the injury or death and the employment.
 
 
 6
 33 U.S.C. § 913(a)(2) (West 1986). (Emphasis added.) Thus, under section 13(a), the limitations period begins to run upon the claimant's awareness that he sustained an injury that is employment-related and that that injury is compensable--e.g., it has resulted in a loss of wage-earning capacity. See Stancil v. Massey, 436 F.2d 274 (D.C.Cir.1970).
 
 
 7
 In reversing the ALJ, the Board found that, as a matter of law, Caudill's claims were timely filed
 
 
 8
 in light of Dr. Yasako's (sic) erroneous opinion that [Caudill's] condition had stabilized without residual permanent impairment, the absence of any evidence that [Caudill] knew that the injury had affected his wage-earning capacity until he consulted [another doctor] in February 1982, and the Section 20(b), 33 U.S.C. § 920(b), presumption of timely filing.
 
 
 9
 (ER at 16.) Sea Tac oversimplifies the Board's reasoning when it argues that the Board simply concluded there was a misdiagnosis and, thus, knew that the statute of limitations was tolled. We have stated that "[a] doctor's advice is the best of reasons for a claimant's believing himself not reduced in earning capacity." Abel, 932 F.2d at 822. Dr. Yasayko released Caudill for regular work, erroneously concluding that Caudill's condition had stabilized without residual permanent impairment which would handicap him in securing or maintaining employment. The Board's finding that Caudill's claim was timely filed is AFFIRMED.
 
 II. Suitable, Alternative Employment
 
 10
 Sea Tac next contends the Board erred in finding it failed to satisfy its burden of establishing that suitable, alternative employment existed for Caudill. To establish a prima facie case of total disability, an employee must show he is unable to perform his usual employment due to his work-related injury. Once a prima facie case is established, the burden shifts to the employer to demonstrate the availability of suitable alternate employment. See Bumble Bee Seafoods, 629 F.2d at 1329. We require that the employer point to specific jobs the claimant can perform. We have said:
 
 
 11
 In determining the employee's ability to perform possible work, the Board must consider the claimant's technical and verbal skills, as well as the likelihood, given the claimant's age, education, and background, that he would be hired if he diligently sought the possible job.
 
 
 12
 Stevens v. Director, OWCP, 909 F.2d 1256, 1258 (9th Cir.1990), cert. denied sub nom., Lockheed Shipbuilding Co. v. Director, OWCP, 498 U.S. 1073 (1991).
 
 
 13
 It is undisputed that Caudill was physically unable to return to work as a machinist's helper due to his neck injury. It is also undisputed that Sea Tac pointed to only one source of suitable, alternate employment: automobile sales. The ALJ found that, though physically able to perform such work, given his "dispirited" state, Caudill lacked the confidence and aggressiveness to perform at a productive level in this highly competitive field, especially since he had previously failed in that field. The Board affirmed, noting that it had previously held that a claimant's success as a salesman "may be too speculative for such a position to constitute suitable alternate employment." See Hoard v. Willamette Iron & Steel Co., 23 BRBS 38 (1989).
 
 
 14
 We are concerned with the ALJ's decision that, due to his "dispirited" state, Caudill no longer possessed the attributes of alertness and aggressiveness to be an effective salesperson. Nonetheless, the ALJ, as fact-finder, may rely on his observations of the claimant in deciding whether he or she is disabled. See Cardillo v. Liberty Mutual Ins. Co., 330 U.S. 469, 478 (1947). It is the employer's burden to show suitable, alternative employment. Our review of the record reveals that Sea Tac failed to shoulder this burden. The Board's finding that Sea Tac did not establish that suitable, alternative employment for Caudill was available is AFFIRMED.
 
 III. Aggravation Rule
 
 15
 Prior to his employment with Sea Tac, Caudill had a pre-existing disability in his neck which, when combined with his neck injury, resulted in his disability. Before the ALJ and the Board and now before this court, Sea Tac argues it was entitled to relief under section 8(f) of the LHWCA, 33 U.S.C. § 908(f), which limits the effect of the "aggravation rule" on an employer. On appeal, Sea Tac urges us to follow a "trend" begun by the fourth and sixth circuits, see Newport News Shipbuilding v. Harris, 934 F.2d 548 (4th Cir.1991); American Ship Bldg. v. Director, OWCP, 865 F.2d 727 (6th Cir.1989), and abandon the judicially-created "manifest" requirement for relief under section 8(f). However, this circuit continues to impose the manifest requirement. See Bunge Corp. v. Director, OWCP, 951 F.2d 1109, 1111 (9th Cir.1991). As a three-judge panel, we are bound by this circuit's previous decisions. United States v. State of Washington, 872 F.2d 874, 880 (9th Cir.1989).
 
 
 16
 In determining whether a condition is manifest, the critical element is not actual knowledge of the disability by the employer, but what information the employer has available to him should he decide to take notice of it. Director, OWCP v. Cargill, Inc., 689 F.2d 819 (9th Cir.1982).
 
 
 17
 The ALJ found that Sea Tac was not entitled to relief under section 8(f) because Caudill's pre-existing condition was not manifest to Sea Tac prior to his work injury. The ALJ concluded that a review of the medical records in evidence failed to show that Caudill's serious cervical problem was objectively determinable: rather, showed only that, on three occasions, Caudill saw a chiropractor for three different episodes of neck and shoulder pain. The Board affirmed. It concluded that "a post hoc diagnosis of a pre-existing condition, even a diagnosis based only on medical records in existence prior to the date of injury, is insufficient to meet the manifest requirement of Section 8(f)." (ER at 45.)
 
 
 18
 In support of its position, Sea Tac points to the uncontroverted testimony of Reed Wilson, M.D. (Dr. Wilson) that, based solely on his examination of Caudill's medical records from the three chiropractic consultations he diagnosed the pre-existing condition. In the hearing before the ALJ, Dr. Wilson was asked:
 
 
 19
 "[J]ust looking at [the pre-disability] records and forgetting about what's happened since then, are you able on a more-probable-than-not basis to make a diagnosis of degenerative disk disease in the claimant's cervical area[?]"
 
 
 20
 (Id. at 176.) (Emphasis added.) Dr. Wilson responded:
 
 
 21
 [T]o me the records that I reviewed that ante-dated the injury allow for a fairly confident diagnosis of cervical spondylosis, also with radiculopathy, nerve root pressure, prior to the injury in September 1980.
 
 
 22
 (Id. at 180.) We agree with the Board that Dr. Wilson's post-hoc diagnosis of Caudill's condition does not entitle Sea Tac to section 8(f) relief.
 
 
 23
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Caudill claims the issues in this appeal include the propriety of the ALJ's denial of his motion for reconsideration. Caudill has not appealed that decision and Sea Tac's notice of appeal does not encompass it. As such, we do not consider the propriety of the ALJ's denial of Caudill's motion for reconsideration